## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **STEPHEN S. PUTNAL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **5:04-CV-130 (HL)** |
| **THE GUARDIAN LIFE INSURANCE** | : | |
| **COMPANY OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 81) and Defendant's Motion to Strike (Doc.109). For the reasons explained herein, Defendant's Motion for Summary Judgment is denied and Defendant's Motion to Strike is denied.

## I. FACTS

This action arises out of Defendant The Guardian Life Insurance Company of America's failure to pay disability benefits allegedly due to Plaintiff Stephen Putnal under two separate disability insurance policies. Defendant initially determined Plaintiff was entitled to benefits under the policies; however, those benefits were terminated in 2001 when Defendant concluded Plaintiff was no longer disabled. As a result, Plaintiff filed suit in the State Court of Bibb County to recover lost disability benefits under the policies as well as damages for Defendant's alleged bad faith in refusing to pay Plaintiff benefits due. Defendant subsequently removed the action to this court on April 26, 2004, and filed a

Motion for Summary Judgment on February 3, 2006. Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, the Court finds as follows.

A. Plaintiff's 1990 Disability Insurance Policy

On November 14, 1990, Defendant issued a disability insurance policy to Plaintiff. The standard policy provides benefits in the event the insured becomes "totally disabled;" however, Plaintiff also purchased an optional rider that provides benefits in the event he becomes "residually disabled." The policy defined "total disability" as follows:

> Total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation. Occupation means your regular occupation or profession at the time you become disabled. If you have limited your professional practice to a recognized specialty in medicine, dentistry, law or accounting, we will deem your specialty to be your occupation. You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation.

(Def. Mot. Summ. J., Ex. 1 at 7.) Further, the optional rider defined "residual disability" as follows:

> Residual disability means that you are at work and are not totally disabled under the terms of this policy; but, because of sickness or injury, you are unable to earn at a rate of at least 80% of your prior income.

(Pl. Resp. to Def. Mot. Summ. J., Ex. 1 at 3.)

B. Plaintiff's 1999 Disability Insurance Policy

As the 1990 policy provided for a future increase in coverage without current evidence of good health, Plaintiff purchased a second policy, which included the optional "residual disability" rider, from Defendant on November 14, 1999. The policy defines "total disability" in the following manner:

2

> Total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation. Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled. You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation. If your occupation is limited to a single medial specialty certified by the American Board of Medical Specialties or a single dental specialty recognized by the American Dental Association, we will deem your specialty to be your occupation.

(Def. Mot. Summ. J., Ex. 2 at 8.) The optional rider defined "residual disability" as follows:

> Residual disability means that you are at work and are not totally disabled under the terms of this policy but, because of sickness or injury your loss of income is at least 20% of your prior income.

(Def. Mot. Summ. J., Ex. 2 at 13.)

C. Plaintiff's Occupation Prior to Disability

Plaintiff graduated from the Georgia Institute of Technology in 1974 with a degree in industrial management. Plaintiff subsequently earned a Bachelor of Science in Pharmacy from Mercer University in 1981. After accumulating the required number of hours training in the handling of radioactive materials, Plaintiff was licensed as a certified nuclear pharmacist. Plaintiff was employed by Nuclear Pharmacy, Inc as a practicing nuclear pharmacist until February 1985.

In November of 1985, Plaintiff opened his own nuclear pharmacy and began working as a nuclear pharmacist. Over the next five years, in addition to operating his nuclear pharmacy, Plaintiff organized and operated a second associated business that provided medical equipment, compounded pharmaceuticals, intravenous solutions, and other related home healthcare service. By 1995, Plaintiff had opened four more nuclear pharmacies

throughout the southeast.

From 1995 through October 1998, Plaintiff personally managed five nuclear pharmacies he had previously established. Plaintiff also acted as the substitute pharmacist for all five pharmacies, instead of employing an on-call nuclear pharmacist to run each facility when the regular pharmacist needed relief or was otherwise unavailable, and Plaintiff was responsible for training new pharmacists. According to Plaintiff, his major duties at the time included the following: (1) compounding, manipulating and dispensing radio-pharmaceutical materials; (2) performing quality control tests on radio-pharmaceutical materials and prescriptions; (3) packing for delivery radio-pharmaceutical prescriptions; (4) performing the labeling required by Department of Transportation regulations; (5) entry of data by computer keyboard; (6) administration of the radiation safety program; (7) inventory control; and (8) administration of transportation and delivery of the product.

D. Plaintiff's Medical Condition

In October of 1998, Plaintiff suffered a cerebrovascular stroke, which caused extensive brain tissue death. Plaintiff's stroke was a consequence of a then unknown blood condition known as polycythemia rubra vera. The condition is a malignant and incurable cancer of the blood and continues to cause tissue death in Plaintiff's brain. As a result of this condition, Plaintiff can no longer expose himself to most of the radiopharmaceuticals found in nuclear pharmacies.

Immediately following the stroke, Plaintiff was completely paralyzed on the left side of his body. After extensive physical therapy, Plaintiff has been able to regained limited

control over his left extremities. Nevertheless, Plaintiff continues to experience loss of function and weakness on the left side of his body. Due to the stroke, Plaintiff is also hyper-reflexic with clonus on the left side of his body. This condition causes contractions and relaxations of the muscles in rapid succession.

As a result of his medical condition, Plaintiff does not have fine motor control of his left hand and does not have control of his left leg. Plaintiff is unable to button his shirt; tie his shoes; point most of his fingers; move his wrist, elbow, and hand in a smooth fashion; and hold a cylinder in an upright position for a functional length of time.  Plaintiff also suffers from decreased balance, gait, coordination and endurance. Plaintiff tends to fall regularly, has difficulty going up and down stairs, and walks at a very slow pace. Plaintiff's stamina has also been significantly impaired.

## II. DEFENDANT'S MOTION TO STRIKE

Federal Rule of Civil Procedure 56(e), sets forth specific requirements for supporting and opposing affidavits. According to Rule 56(e), affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In addition, when a document is referenced in an affidavit, a sworn or certified copy of the document must also be attached to the affidavit. An affidavit which fails to comport with these requirements is subject to a motion to strike.  See Auto-Drive-Away Co. of Hialeah, Inc. v. I.C.C., 360 F.2d 446, 449 (5th Cir. 1966); McNair v. Monsanto, 279 F.Supp.2d 1290, 1299 n.10 (M.D. Ga. 2003). Nevertheless, the preferred method for challenging a defective

affidavit is to file a notice of objection to the challenged portion of the affidavit. <u>See</u> <u>Newsome v. Webster</u>, 843 F. Supp. 1460, 1464 (S.D. Ga. 1994) (noting United States District Court for the Southern District of Georgia does not entertain motions to strike affidavits); <u>Morgan v. Sears, Roebuck & Co.</u>, 700 F. Supp. 1574, 1576 (N.D. Ga. 1988) (noting United States District Court for the Northern District of Georgia does not entertain motions to strike affidavits). In view of the forgoing, the Court will treat Defendant's Motion to Strike as an objection to Plaintiff's affidavit. Accordingly, Defendant's Motion to Strike is denied and the Court will address the admissibility of the challenged statements as part of its consideration of the pending summary judgment motion in the case.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

<u>A. Summary Judgment Standard</u>

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the Court must evaluate all evidence and any logical inferences in a light most favorable to the non-moving party.  <u>Beckwith v. City of Daytona Beach Shores</u>, 58 F.3d 1554, 1560 (11th Cir. 1995).

"[T]he plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of

summary judgment, after adequate time and discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant carries the initial burden and must meet this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving partys' case." Id. at 325. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.  The nonmoving party must put forth more than a "mere 'scintilla' of evidence;" "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Thus, under Rule 56 summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

B. "Total Disability" Under the Contract

Defendant asserts "total disability" within the meaning of the relevant policies

requires that an insured be unable to perform all of the major duties of his or her regular occupation. Accordingly, Defendant asserts that it is entitled to summary judgment because Plaintiff cannot show he is unable to perform each and every major duty of his occupation. In response, Plaintiff argues that nothing in the relevant policies requires Plaintiff to be unable to perform all of the major duties of his occupation in order to be "totally disabled."

Under Georgia Law,[1] "[t]he construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1 (1982). A three step process is used to apply the rules of construction to contracts. CareAmerica, Inc. v. S. Care Corp., 229 Ga. App. 878, 880 (Ga. Ct. App. 1997). In step one, a court must determine whether the language of the contract is clear or ambiguous. Id. Whether or not contract language is ambiguous is a question of law for the court. Se. Atl. Cargo Operators v. First State Ins. Co., 197 Ga. App. 371, 372 (Ga. Ct. App. 1990). When only one reasonable interpretation of the contract language is possible, the contract is simply enforced as written. Sapp v. State Farm Fire & Cas. Co., 226 Ga. App. 200, 202 (Ga. Ct. App. 1997). In contrast, if the contract is ambiguous, the court continues to step two. CareAmerica, 229 Ga. App. 880.

In step two, a court applies the rules of contract construction to resolve any ambiguity. Id. "The cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3 (1982). Therefore, words in a contract are to be given their "usual, ordinary, and

---

[1] This case is before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332 (2000). Accordingly, the Court follows Georgia substantive law as the law of the forum state. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 77, 58 S. Ct. 817, 822 (1938).

common meaning." <u>Bold Corp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 216 Ga. App. 382, 383 (Ga. Ct. App. 1995) (citing O.C.G.A. § 13-2-2(2) (1982)). "Dictionaries may supply the plain and ordinary sense of a word." <u>Mkt. Place Shopping Ctr. v. Basic Bus. Alternatives, Inc.</u>, 213 Ga. App. 722, 722 (Ga. Ct. App. 1994). In addition, "where the construction of any part [involved is] in doubt, an understanding of its meaning is to be sought in the light afforded by the meaning of all the other parts of the instrument." <u>Fed. Rubber Co. v. King</u>, 12 Ga.App. 261, 261 (Ga. Ct. App. 1913). "Even if one part of the contract is somewhat repugnant to the remaining portions, the true meaning of the contract as a whole is to be ascertained and enforced." <u>Id.</u>

Moreover, when construing an insurance contract, "[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." <u>Nationwide Mut. Fire Ins. Co. v. Collins</u>, 136 Ga. App. 671, 675 (Ga. Ct. App. 1975). Accordingly, "[t]he policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. <u>Id.</u> Furthermore, "if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured." <u>Claussen v. Aetna Cas. & Sur. Co.</u>, 259 Ga. 333, 335 (Ga. 1989). Should the contract language remain ambiguous after applying the relevant rules of contract construction, a court must continue to step three and submit the contract to a jury to decide the intent of the parties. O.C.G.A. § 13-2-1 (1982).

Here, the parties disagree over the meaning of the phrase "total disability." The contract states that "[t]otal disability means that, because of sickness or injury, you are not

able to perform the major duties of your occupation." Defendant argues that under the policy Plaintiff must show that he is unable to perform all of the major duties of his occupation in order to establish "total disability."[2] Plaintiff argues that he can establish "total disability" under the policy by showing that he is unable to perform some of the major duties of his occupation. As the contract only states that an insured must show that he is unable to perform the major duties of his occupation, it is unclear from the plain language how many major duties an insured must be unable to perform in order to qualify as "totally disabled." Therefore, the language is ambiguous and subject to multiple reasonable interpretations.

As the contract language is ambiguous, the Court now turns to step two and applies

---

[2]Defendant asserts that as a district court exercising diversity jurisdiction, this Court is required to follow the line of Georgia cases holding that "total disability" exists only where the insured is unable to perform all of the substantial and material duties of his or her occupation. While the Court notes that Georgia law governs this case, the interpretation of a contact is an inherently case specific inquiry. Accordingly, the cases cited by Defendant are not applicable to this case as the contract language interpreted in those cases significantly differs from the contract language relevant here. See Cloer v. Life & Cas. Ins. Co., 222 Ga. 798, 800 (1966) (interpreting contract defining total disability as "the result of bodily injury or disease so as to be wholly prevented thereby from engaging in any occupation or employment for wage or profit."); Mutual Life Ins. Co. v. Barron, 198 Ga. 1, 2 (1944) (interpreting contract defining total disability as "any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation."); Metro. Life Ins. Co. v. Johnson, 194 Ga. 138, 139 (1942) (interpreting contract defining total disability as a "bodily injury, or disease occurring and originating after the issuance of said policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit."); Prudential Ins. Co. v. South, 179 Ga. 653, 654 (1934) (interpreting contract stating insured was totally disabled when "rendered wholly, continuously, and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his life.); Cato v. Aetna Life Ins. Co., 164 Ga. 392, 392 (1927) (interpreting contract defining total disability as a disability that will "prevent such employee from pursuing any occupation for wages or profit . . . .").

the rules of contract construction. First, the Court notes that the plural form of the word "duty" was used in the contract. Generally, the plural form of a noun indicates that there are more than one of the person or thing in question. Thus, under the policy, an insured must be unable to perform at least two major duties of his or her occupation to be "totally disabled."

Second, the contract uses the word "major" to describe the duties an insured must be unable to perform. "Major" is defined as "greater than others in importance or rank." The American Heritage College Dictionary 881( 3d ed. 1997). Therefore, it stands to reason that the inability to perform every single duty associated with a specific occupation is not required to meet the definition of "total disability" under the policy. Only those duties that are considered greater than others in importance or rank are relevant.

Third, the policies at issue in this case also contain "residual disability" riders, which provide some benefits to an insured if he or she is rendered "residually disabled." The policy issued in 1990 states that "[r]esidual disability means that you are at work and are not totally disabled under the terms of this policy; but, because of sickness or injury, you are not able to earn at a rate of at least 80% of your prior income." The policy issued in 1999 defines the term in essentially the same manner, but specifies that an insured's "loss of income [must be] at least 20% of [his or her] prior income."

Defendant argues that when read together, the disability provisions of the policies envision that the inability to perform one or more, but not all of the major duties of one's occupation is classified as "residual disability," while only the inability to perform all of the major duties of one's occupation is classified as "total disability." Defendant argues that any

other reading would nullify the "residual disability" provisions of the policies. In contrast, Plaintiff argues that the "residual disability" provisions of the policies are immaterial to the definition of total disability as the "residual disability" provision only become applicable when an insured is not disabled under the terms of the policy.

The Court agrees that adopting a definition of the term "total disability" that entirely eclipses the definition of the term "residual disability" is unacceptable. Nevertheless, the Court is not persuaded that the only way to give meaning to both terms is to severely restrict the definition of the term "total disability." For example, assume that the inability to perform a single major duty of one's occupation is enough to render an insured "totally disabled." Under this interpretation, an insured able to perform every major duty of his or her occupation, yet unable to perform various minor duties of his or her occupation, could nevertheless qualify as "residually disabled," provided he or she suffered a loss of income of at least twenty percent.  Therefore, even adopting the interpretation of "total disability" favored by Plaintiff would not render the "residual disability" provisions meaniningless.

Finally, as previously discussed, if the language of an insurance contract is subject to multiple reasonable interpretations, the contract must be construed against the insurance company and in favor of the insured. After applying all relevant rules of contract construction, two reasonable interpretations of the term "total disability" remains. As it is unclear whether an insured must show that he or she is unable to perform all of the major duties of his or her occupation or whether an insured can simply show that he or she is unable to perform two or more of the major duties of his or her occupation, the contract language

12

must be construed in favor of the insured. Accordingly, the Court determines that the insured need not show that he is unable to perform each and every major duty of his occupation to be "totally disabled." Rather, to qualify as "totally disabled" under the polices at issue here, an insured must show that he is unable to perform two or more of the major duties of his occupation.

C. Plaintiff's Condition

Despite having resolved the ambiguity present in the contract language, multiple factual disputes regarding Plaintiff's occupation, the major duties of that occupation, and Plaintiff's current medical condition prevent the Court from proceeding further. First, irrespective of the various titles the parties attempt to attach to Plaintiff's occupation, the evidence is in conflict regarding Plaintiff's occupation at the time he became disabled. Plaintiff asserts that at the time of his disability he was a practicing nuclear pharmacist who also owned and operated several nuclear pharmacies. In contrast Defendant argues that the prescription records from Plaintiff's various pharmacists show that the time Plaintiff spent practicing nuclear pharmacy was negligible. Accordingly, Defendant asserts Plaintiff was essentially an entrepreneur at the time of his disability.  In addition, the parties do not agree about the duties Plaintiff performed prior to his disability or which of those duties should be classified as major.

Finally, what duties Plaintiff is unable to perform as a result of his medical condition is in dispute. Defendant argues that Plaintiff remains able to perform the executive, managerial, and entrepreneurial duties he performed prior to his disability. In support,

13

Defendant shows that Plaintiff opened four additional nuclear pharmacies and three health services companies after becoming disabled. Plaintiff, however, provides the Court with detailed medical evidence documenting his condition and limitations. The evidence shows Plaintiff cannot effectively make presentations to other professionals, travel, walk long distances, perform tasks with both hands, or be exposed to radiopharmaceuticals. Given this evidence, a reasonable jury could find that Plaintiff's medical condition prevents him from performing two or more major duties of his pre-disability occupation. Therefore, the issue is a matter that must be determined by a jury.  As such, Defendant's Motion for Summary Judgment is denied.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied and Defendant's Motion to Strike is denied.


**SO ORDERED**, this the 29th day of September, 2006.


/s/ Hugh Lawson
**HUGH LAWSON, Judge**

scs

14